STATE OF NEBRASKA, APPELLEE, V.
DAVID C. STEELE, APPELLANT.

624 N.W. 2d 1

Filed March 30, 2001.   No. S-00-477.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

David C. Steele appeals the district court's order overruling his motion to discharge on statutory and constitutional speedy trial grounds. Steele was charged with felony criminal mischief and released on bond. Prior to trial, scheduled in Lancaster County District Court, 'the Lancaster County Attorney filed a fugitive complaint against Steele. The complaint alleged that

Steele was a fugitive from justice in Colorado. Steele was taken into custody and waived extradition to Colorado under the Uniform Criminal Extradition Act, Neb. Rev. Stat. §§ 29-729 to 29-758 (Reissue 1995) (Extradition Act). Steele was not returned to Nebraska until after the trial deadline imposed by Neb. Rev. Stat. § 29-1207 (Reissue 1995), a Nebraska speedy trial statute.

This appeal presents interrelated issues: (1) Whether § 29-1207 or the Agreement on Detainers (Agreement), found in Nebraska at Neb. Rev. Stat. § 29-759 (Reissue 1995), controls a defendant's statutory right to a speedy trial when he or she is extradited after an information has been filed and trial has been set and (2) whether the time period during which a defendant is voluntarily surrendered to another jurisdiction is chargeable to the State or to the defendant under § 29-1207(4)(d). We conclude that when a defendant under the State's control is knowingly extradited by the prosecuting attorney to another jurisdiction after an information or indictment has been filed against him or her, the defendant's statutory right to a speedy trial is governed by § 29-1207 and the trial deadline is not tolled under § 29-1207(4)(d). Accordingly, we reverse.

## I. BACKGROUND

Steele was charged by information in Lancaster County District Court on April 16, 1999, with felony criminal mischief. He pled not guilty at his arraignment, trial was set for June 21, and he was released on bond. On April 16, Steele filed a motion seeking discovery, which was granted on May 13.

On May 20, 1999, the Lancaster County Attorney filed a fugitive complaint against Steele, alleging that he was a fugitive from Fremont County, Colorado. Colorado had issued a warrant against Steele after he had failed to appear for charges of reckless driving and driving with a revoked license, but had not lodged a detainer against him in Nebraska. Steele was taken into custody, and on May 24, he waived extradition and was returned to Colorado pursuant to the Extradition Act. The prosecuting attorney did not lodge a detainer against Steele at that time.

Steele's case came up for docket call on July 13, 1999, for the jury term scheduled to commence July 26. Defense counsel

informed the court that Steele was incarcerated in Colorado until December 24, 1999, and would need transportation back to Nebraska for trial. The State asked the court to issue a bench warrant against Steele so that he could be extradited back to Nebraska, and the motion was granted. However, by the July 26 trial date, the State had not started the extradition process because the prosecuting attorney claimed he did not know the location in Colorado where Steele was being held. The case was continued to July 28. On July 28, the case was taken off the trial list because the State could not obtain Steele's presence. On August 5, a bench warrant was issued for Steele.

On August 31, 1999, the case again came up for docket call, but Steele's presence had not been obtained, although the prosecuting attorney stated that he believed that steps had been taken to locate him. Trial was set for September 13. On September 9, the prosecuting authorities lodged a detainer against Steele in Colorado. The record does not reflect what happened on September 13, but a trial was not held. On September 30, another docket call was held. The State informed the court that it had lodged a detainer in Colorado, asking for Steele's return after he had completed his sentence. On October 18, the court removed the case from the trial list over Steele's attorney's objection. At each docket call, defense counsel informed the court that the case was ready for trial but that Steele had not been extradited.

On November 2, 1999, Steele waived extradition, agreeing to return to Nebraska. He was picked up by the Lancaster County Sheriff's Department on or about November 29. On December 2, Steele filed a motion to discharge based on speedy trial grounds.

The district court found that Steele had voluntarily waived extradition and had failed to take any action to make himself available to appear in Nebraska, other than to have his attorney appear in court and claim that the case was ready for trial. The court therefore found that Steele was unavailable from the time of his voluntary extradition from Nebraska to his voluntary extradition from Colorado, and the court excluded this period from the 6-month trial deadline under § 29-1207. The district court obviously considered § 29-1207 to control Steele's statu-

tory speedy trial claim. The State argues on appeal, however, that the speedy trial provisions of the Agreement are controlling.

## II. ASSIGNMENTS OF ERROR

Steele assigns as error, restated, the district court's overruling of his motion to discharge (1) for statutory speedy trial violations and (2) constitutional speedy trial violations.

## III. STANDARD OF REVIEW

Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Baird*, 259 Neb. 245, 609 N.W.2d 349 (2000); *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

However, to the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *State v. Tucker, supra.*

## IV. ANALYSIS

### 1. APPLICABLE STATUTES

Steele contends his statutory trial deadline is governed by Nebraska's speedy trial statutes, Neb. Rev. Stat. §§ 29-1205 to 29-1209 (Reissue 1995). The State contends that the speedy trial provisions of the Agreement are controlling. If the State is correct, then Steele's claim that his statutory right to a speedy trial has been violated is without merit.

Section 29-1207 provides that every person indicted or informed against for any offense shall be brought to trial within 6 months. *State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999); *State v. White*, 257 Neb. 943, 601 N.W.2d 731 (1999).

The Agreement, on the other hand,

provides the procedure whereby persons who are imprisoned in one state or by the United States, and who are also charged with crimes in another state or by the United States, can be tried expeditiously for the pending charges while they are serving their current sentences, in order to avoid prolonged interference with rehabilitation programs.

*State v. Williams*, 253 Neb. 619, 624, 573 N.W.2d 106, 110 (1997), citing § 29-759, article I. See, also, *United States v.*

*Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978) (delineating disadvantages prisoners sustain as result of having detainers lodged against them).

■ There is no question that the Agreement controls a defendant's speedy trial rights when he or she is already incarcerated in another state or in a federal facility before an information is filed against the defendant in Nebraska. See, e.g., *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984) (analyzing defendant's statutory right to speedy trial under only Agreement where defendant was incarcerated by federal authorities in California before he could be arrested in Nebraska). Which statutory scheme controls when the general speedy trial statutes have been triggered and the defendant is then extradited to another state, however, is an issue of first impression in Nebraska.

The State argues that the statutory scheme of the Agreement, § 29-759, is remarkably similar to the procedural requirements for obtaining a final disposition of outstanding charges under Nebraska's disposition of untried charges statutes, which govern the resolution of pending charges against in-state inmates. See Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 1995). The State argues that there is no reason to distinguish between in-state and out-of-state inmates when the procedural requirements for obtaining a speedy trial are identical. Thus, the State argues that by analogizing to *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000), this court should find that Steele's speedy trial rights are governed by the Agreement.

In *Tucker*, the defendant was arrested and convicted on charges in Jefferson County, Nebraska, while he was released on bond on charges pending in Lancaster County, Nebraska. The Lancaster County Attorney obtained his presence for trial through a writ of habeas corpus ad prosequendum, but not before the speedy trial deadline under § 29-1207 had expired. We held that because the defendant was in the custody of the Nebraska Department of Correctional Services at the time he filed his motion, his statutory speedy trial claim was governed by §§ 29-3801 to 29-3809. *State v. Tucker, supra.*

When dealing with in-state prisoners, the trial deadline under § 29-3805 can be triggered only by the prosecutor's receipt of

the required certificate from the Director of Correctional Services. The director is obligated to issue that certificate upon request by the prisoner under § 29-3803, or upon request by the prosecutor under § 29-3804 if the prosecutor has lodged a detainer against the prisoner. The prosecutor had not lodged a detainer in *Tucker*, but we noted that the statutes do not obligate the prosecutor to do so. Further, the defendant himself had failed to ask for a final disposition even though he had actual knowledge of the charges in Lancaster County and could have asked for final disposition without the filing of a detainer against him. We therefore held that the trial deadline was never triggered under § 29-3805 and that the defendant's statutory speedy trial rights had not been violated. *State v. Tucker, supra.*

But this case is different from *Tucker* in two respects. First, " '[t]he provisions of the Agreement apply only when a detainer has been lodged against a prisoner who has entered a term of imprisonment in a party State.' " See *State v. Reynolds*, 218 Neb. at 756, 359 N.W.2d at 98. Accord *United States v. Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). The defendant in *Tucker* was free to request a speedy trial disposition without the filing of a detainer against him. Here, Steele could not have triggered the speedy trial provisions of the Agreement before September 9, 1999, because the State did not lodge a detainer against him until that date.

Second, the defendant in *Tucker* was arrested in Jefferson County while released on bond. In this case, while Steele was released on bond, the county attorney's office filed a fugitive complaint against him on May 20, 1999, 1 month before his trial was scheduled to take place on June 21. He was arrested shortly thereafter, and the county attorney's office relinquished its control over him and delivered him to authorities from Colorado under the Extradition Act. We determine that *Tucker* is not dispositive.

The Agreement is a congressionally sanctioned interstate compact, which is subject to federal construction. See *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997), citing *Cuyler v. Adams*, 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). On the federal level, the U.S. Supreme Court noted in *United States v. Mauro, supra*, that the federal Speedy Trial Act of

1974, 18 U.S.C. § 3161 et seq. (1994), is not incompatible with the Agreement: "In situations in which two different sets of time limitations are prescribed, the more stringent limitation may simply be applied." 436 U.S. at 357 n.24. See, also, *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir. 1985).

Other states that have considered the issue have come to the same conclusion in regard to the Agreement and their state speedy trial provisions. Colorado courts make a distinction between filing an information against a defendant who is already imprisoned in another state, see *Simakis v. Dist. Ct.*, 194 Colo. 436, 577 P.2d 3 (1978) (determining that defendant's statutory claim is analyzed under Agreement), and a defendant that is under the state's control when the general speedy trial statute is triggered and then extradited. In the latter situation, the general speedy trial statutes control. See, e.g., *People v. Yellen*, 739 P.2d 1384 (Colo. 1987) (analyzing defendant's speedy trial claim under state's general speedy trial statutes, while excluding time defendant was out of state because he had voluntarily requested disposition of his out-of-state charges under Agreement without notifying the prosecuting attorney of his imminent departure); *People v. Moye*, 635 P.2d 194 (Colo. 1981) (same result as *Yellen* where defendant was involuntarily extradited from different county and prosecuting attorney was unaware of proceedings and had no opportunity to object to extradition); *People v. Wimer*, 43 Colo. App. 237, 604 P.2d 1183 (1979) (analyzing statutory claim under general speedy trial statutes where trial deadline had been triggered and defendants were then voluntarily surrendered by state pursuant to fugitive warrants).

The Washington Supreme Court, similarly, has held there is not a conflict between the time limits of a state's speedy trial statute and the Agreement. See *State v. Peterson*, 90 Wash. 2d 423, 585 P.2d 66 (1978). Although Washington has since amended its speedy trial statute to exclude periods during which a defendant is detained in another jurisdiction's prison or jail, see Wash. Crim. R. 3.3(g)(6), in *Peterson*, the Supreme Court specifically rejected the contention that the Agreement's trial deadline was controlling when the general speedy trial statute had already been triggered. See, also, *Patterson v. State*, 318 Ark. 358, 885 S.W.2d 667 (1994) (analyzing defendant's statu-

tory right to speedy trial under both Agreement and general speedy trial statutes).

As a matter of policy, holding that the speedy trial provisions of the Agreement controlled in this case would allow the State to ignore the speedy trial deadline under § 29-1207 whenever a concurrent extradition was requested. There is no inherent incompatibility between § 29-1207 and the speedy trial provisions under the Agreement. The Agreement provides the means by which prosecuting authorities can obtain a defendant's presence to stand trial, but it does not relieve those authorities from their obligation to use all reasonable diligence to try a criminal defendant under their control within the time limitations of § 29-1207.

■ Thus, we conclude that once the operation of Nebraska's speedy trial statutes has been triggered by the filing of an indictment or information, the statutory right to a speedy trial of a defendant under the control of prosecuting authorities who knowingly extradite him or her to another state or to federal authorities is governed by § 29-1207, not the Agreement.

### 2. Merits of Statutory Speedy Trial Claim

The information against Steele was filed on April 16, 1999. Excluding the day the information was filed, the last day on which Steele could have been tried within the statutory 6-month period was October 16, unless any period between the filing of the information and commencement of trial must be excluded. See, *State v. Ward*, 257 Neb. 377, 597 N.W.2d 614 (1999); *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997).

■ To avoid a defendant's absolute discharge from an offense charged, as dictated by § 29-1208, the State must prove by a preponderance of the evidence the existence of a period of time which is authorized by § 29-1207(4) to be excluded in computing the time for commencement of the defendant's trial. *State v. Baird*, 259 Neb. 245, 609 N.W.2d 349 (2000); *State v. Turner, supra.*

Section 29-1207(4) provides, in relevant part:

The following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including . . . the time from

filing until final disposition of pretrial motions of the defendant . . . .

. . . .

(d) The period of delay resulting from the absence or unavailability of the defendant.

### (a) Pretrial Motions

On April 26, 1999, Steele filed a pretrial motion seeking discovery, which was granted on May 13. Therefore, the district court properly added 18 days to the 6-month period for this delay, bringing the deadline to November 2. See *State v. Ward, supra.* Steele was not returned to Nebraska until November 29. His motion for discharge was filed on December 2, which again tolled the trial deadline. See *id.* Therefore, unless some other excludable period applies under § 29-1207(4) to cover the 30 days from November 2 to December 2, Steele is entitled to discharge under § 29-1208.

### (b) Unavailability

The district court found that Steele was unavailable from the time of his voluntary waiver of extradition to Colorado on May 24, 1999, to his voluntary waiver of extradition back to Nebraska on November 2, and excluded this period from the speedy trial deadline. In Nebraska, whether a defendant's unavailability is an excludable time period under § 29-1207(4)(d) depends upon whether it is attributable to the State or to the defendant. See, e.g., *State v. Letscher,* 234 Neb. 858, 861, 452 N.W.2d 767, 769 (1990) ("when *a defendant* has commenced a period of delay due to his or her absence or unavailability, the period of time from the defendant's later availability to the next reasonably available trial date is excludable under § 29-1207" (emphasis supplied)); *State v. Kriegler,* 225 Neb. 486, 406 N.W.2d 137 (1987) (delay occasioned by defendant's failure to appear while jury panel was in session was excludable under § 29-1207(4)(d)). Thus, the question is whether Steele's extradition and resulting unavailability is attributable to the State or to Steele.

The county attorney's office filed the fugitive complaint against Steele on May 20, 1999, 1 month before his trial was

scheduled to take place on June 21. Steele waived extradition proceedings on May 24 and voluntarily returned to Colorado as provided for under § 29-754.

Under § 29-730 of the Extradition Act,

> it is the duty of the Governor of this state to have arrested and delivered up to the Executive Authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

But the Extradition Act also provides that whenever a person in this state is under a pending criminal prosecution at the time the demanding state's requisition is made, then "the Governor, in his discretion, either may surrender him . . . or hold him until he has been tried and discharged or convicted and punished in this state." § 29-747.

▮ Steele's voluntary waiver of extradition is not dispositive. Under Nebraska's waiver of extradition statute, § 29-754, the State's rights under the Extradition Act are specifically reserved:

> If and when such consent has been duly executed it shall forthwith be forwarded to the office of the Governor of this state and filed therein. . . . *Provided, however*, that nothing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, *nor shall this waiver procedure be deemed* to be an exclusive procedure or *to limit the powers, rights or duties* of the officers of the demanding state or *of this state.*

(Emphasis in original.) (Emphasis supplied.) Simply put, a voluntary waiver of extradition does not prevent the State from refusing to surrender a person against whom a criminal prosecution has been initiated pursuant to § 29-747. Furthermore, because the State failed to lodge a detainer against Steele immediately, the extradition had the effect of preventing him from requesting a speedy disposition of his pending charges in Nebraska. Thus, Steele could not have obtained a swifter disposition by his own action.

▮ The primary burden of bringing an accused person to trial within the time provided by law is upon the State. *State v.*

*Blackson*, 256 Neb. 104, 588 N.W.2d 827 (1999). Where the State has discretion to hold a defendant until trial and the prosecuting attorney has knowledge of extradition proceedings, the defendant's unavailability should be attributed to the State. See *People v. Wimer*, 43 Colo. App. 237, 604 P.2d 1183 (1979) (concluding that speedy trial deadline is not extended when state voluntarily extradites defendant within its control). Thus, the district court erred in excluding this period under § 29-1207(4)(d), and Steele was not brought to trial within 6 months from the filing of the information under § 29-1207(2).

### V. CONCLUSION

We conclude that Steele is entitled to discharge under § 29-1208 because the State has failed to meet its burden of showing that he was brought to trial within the statutory deadline imposed by § 29-1207.

REVERSED.